IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELÍAS RIVERA-FERNÁNDEZ,<br><br>     Plaintiff<br><br>     v.<br><br>AUTONOMOUS MUNICIPALITY OF LOÍZA, et al.,<br><br>     Defendants | CIVIL NO. 07-1935 (JP) |

**OPINION AND ORDER**

Before the Court is a motion for judgment on the pleadings (No. 55) filed by Defendant Autonomous Municipality of Loíza (the "Municipality"), and Plaintiff Elías Rivera-Fernández's ("Rivera") opposition thereto (No. 62). Also before the Court is a motion for judgment on the pleadings (No. 77) filed by Defendants Eddie Manso-Fuentes ("Manso") and Jorge Marcano-Dipini ("Marcano") (collectively, the "Personal Capacity Defendants"), which was not opposed by Plaintiff.

Plaintiff Rivera filed the instant complaint pursuant to 42 U.S.C. §§ 1983 and 1988 ("Section 1983" and "Section 1988," respectively); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et seq.* ("Section 1981"); as well as several Puerto Rico laws, for alleged acts of race discrimination, political discrimination, and retaliation committed by Defendants.

CIVIL NO. 07-1935 (JP)         -2-

Defendants argue that Plaintiff's Section 1983 and Section 1981 claims are time-barred, and that Plaintiff's Title VII claims should be dismissed because he failed to timely exhaust his administrative remedies.  Further, the Personal Capacity Defendants argue that they are entitled to qualified immunity.  For the reasons stated herein, the Municipality's motion for judgment on the pleadings (**No. 55**) is hereby **GRANTED,** and the motion for judgment on the pleadings filed by the Personal Capacity Defendants (**No. 77**) is hereby **GRANTED.**

### I. **FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

Plaintiff Rivera began working for the Municipality in 1996 as an accountant.  In 1997, he became the interim director of the Office of Federal Affairs.  In 1998, he was named director of Human Resources, a position he held until 1999, when he left the employ of the Municipality.

In 2003, Plaintiff Rivera competed in the primaries of the New Progressive Party as a candidate for Representative of District 37. He ran in conjunction with the then-mayor of the Municipality, Ferdin Carrasquillo-Ayala ("Carrasquillo").[1]  Defendant Manso allegedly supported Plaintiff Rivera's opponent in the primary.  Plaintiff Rivera lost the primary.  On January 7, 2004, Plaintiff Rivera was named by Carrasquillo to the trust position of Special Assistant to

---

1. Rivera and Carrasquillo are members of the same political party who were running for different positions at the same time.  Although the complaint suggests that Rivera supported Carrasquillo, it is unclear whether they were on the same ticket or had some form of official affiliation.

CIVIL NO. 07-1935 (JP)         -3-

the mayor of the Municipality. Just one month later, in February 2004, Plaintiff Rivera was notified that he received a qualifying score on the test for the career post of Administrative Official. Accordingly, he was appointed to the career post of Administrative Official in the Department of Public Works ("Department of Public Works") of the Municipality in August 2004. In this capacity, he earned a monthly salary of $3,014.00.

In November 2004, Defendant Manso was elected to be the mayor of the Municipality. Plaintiff Rivera alleges that once the Manso administration took office, Plaintiff became the victim of a pattern of discrimination and a hostile work environment on the basis of his political affiliation with the Carrasquillo administration, as well as his race. Plaintiff Rivera is white, and he alleges that the Manso administration is predominantly comprised of black employees.

Plaintiff Rivera alleges that in October 2005, a television program broadcast an exposé showing that dead animals had been frozen in refrigerators owned by the Department of Public Works. The program allegedly learned about the animals through a tip from an employee of the Department of Public Works. Said employee was neither named nor shown on the program. However, the program showed the arm of the alleged informant, apparently a white person. Plaintiff Rivera was the only white employee in the Department of Public Works at the time. On a different television program, Defendant Manso responded to the earlier broadcast by stating that

CIVIL NO. 07-1935 (JP)            -4-

the frozen animals were kept by employees of the Carrasquillo administration.  Plaintiff Rivera alleges that after Defendant Manso's televised comments, the Municipality's staff met with Rivera and blamed him for the dead animals incident.

Plaintiff Rivera also alleges that in August 2005, Defendants hired Eliecer Calderón-Hernández ("Calderón"), who is black, to perform duties previously performed by Plaintiff Rivera.  Calderón was appointed to work with Rivera, despite the fact that only one such position is authorized by the Municipality.  Since the appointment of Calderón, who is allegedly less educated and less experienced than Plaintiff Rivera, Rivera has been stripped of all duties except for the preparation of one report.  On February 13, 2006, Plaintiff's monthly salary was reduced from $3,014.00 to $1,466.00.  Plaintiff Rivera further alleges that Defendant Manso made racist remarks against white employees, which were essentially directed at Rivera because he was the only white employee at the time the remarks were made.

Although Plaintiff Rivera allegedly notified Defendants Manso and Marcano in writing of his complaint of discrimination in August 2006, Defendants conducted no review of Plaintiff Rivera's complaint.  In contrast, a complaint filed by a black employee against Plaintiff Rivera was allegedly processed by Defendants in eight days.  This complaint was filed as a result of Plaintiff Rivera's breaking of the lock to his office to get his personal

CIVIL NO. 07-1935 (JP)            -5-

laptop computer because Defendants allegedly did not provide Plaintiff with a key to his own office. Plaintiff Rivera is currently employed by the Municipality.

Defendants previously moved the Court to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On September 9, 2008, the Court entered an Opinion and Order (No. 32) granting the motion to dismiss Plaintiff's Title VII claims against Manso and Marcano.[2] The Court denied Defendants' motion to dismiss the Title VII claims against the Municipality, as well as the claims against all Defendants brought pursuant to Sections 1983 and 1988, Title I of the Civil Rights Act of 1991, and Puerto Rico law.

## II. **LEGAL STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS**

The legal standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion to dismiss. MVM Inc. v. Rodríguez, 568 F. Supp. 2d 158, 167 (D.P.R. 2008) (citing Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005)). A Rule 12(c) motion, like a Rule 12(b)(6) motion, "does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment."

---

2. Plaintiff's complaint in its entirety was dismissed as to Defendant Lymari Escobar (No. 33).

CIVIL NO. 07-1935 (JP)          -6-

Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006) (citing Rivera-Gómez v. De Castro, 843 F.2d 631, 635 (1st Cir. 1988)).  A court must view the facts contained in the pleadings in the light most flattering to the non-moving party and draw all reasonable inferences therefrom in its favor. Id. (citing Rivera-Gómez, 843 F.2d at 635); Pasdon, 417 F.3d at 226.

To survive a Rule 12(c) motion, a complaint "must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true[.]'"  Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)). That is, plaintiffs must "nudge[] their claims across the line from conceivable to plausible[.]" Twombly, 127 S. Ct. at 1974.

### III. **ANALYSIS**

Defendants argue that the Court should enter judgment on the pleadings against Plaintiff Rivera on the following grounds: (1) Plaintiff's Section 1983 and Section 1981 claims are time-barred, (2) Plaintiff failed to exhaust his administrative remedies, and (3) the Personal Capacity Defendants are entitled to qualified immunity. The Court will now consider Defendants' arguments in turn.

#### A.   **Time-Bar: Plaintiff's Section 1983 and Section 1981 Claims**

Defendants argue that Plaintiff Rivera's complaint must be dismissed because it is time-barred by the one-year statute of

CIVIL NO. 07-1935 (JP)           -7-

limitations in this jurisdiction.  Section 1983 and Section 1981 actions borrow the forum state's statute of limitations.  See López-González v. Municipality of Comerío, 404 F.3d 548, 551 (1st Cir. 2005); Rodríquez-García v. Municipality of Caguas, 354 F.3d 91, 97 (1st Cir. 2004).  In this jurisdiction, the appropriate statute of limitations for a Section 1983 or a Section 1981 claim is Puerto Rico's one-year period governing tort actions.  See Torres v. Superintendent of the Police of Puerto Rico, 893 F.2d 404 (1st Cir. 1990); see P.R. Laws Ann. tit. 31, § 5297(2) (1990).

The statute of limitations begins to run when the injured party knew or should have known of the injury and of the likely identity of the responsible individual(s).  P.R. Laws Ann. tit. 31, §§ 5141, 5298(2).  The statute of limitations may be interrupted in one of three ways: (1) by the institution of an action before the courts, (2) by extrajudicial claim of the creditor, or (3) by any act of acknowledgment of the debt by the debtor.  P.R. Laws Ann. tit. 31, § 5303.

The United States Court of Appeals for the First Circuit has held that "a letter sent by a tort plaintiff to the tortfeasor, complaining of the tortious conduct and demanding compensation, is an extrajudicial claim that, if timely, interrupts the prescription of the cause of action in tort."  Tokyo Marine & Fire Ins. Co. v. Pérez y Cía. de P.R., Inc., 142 F.3d 1, 4-5 (1st Cir. 1998).  This

CIVIL NO. 07-1935 (JP)            -8-

tolling is effective only with regard to identical causes of action; the filing of one action does not toll the statute of limitations for all claims arising out of the same facts. Fernández v. Chardón, 681 F.2d 42, 49 (1st Cir. 1982). As such, an extrajudicial claim must be both precise and specific. Bonilla-Avilés v. Southmark San Juan, Inc., 992 F.2d 391, 393 (1st Cir. 1993), citing Jiménez v. District Court, 65 P.R. 35, 42 (1945). The relief requested in the extrajudicial claim must be the same relief that is subsequently requested in court. Benítez-Pons v. Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998) (citations omitted); see also Hernández-del Valle v. Santa-Aponte, 575 F.2d 321, 324 (1st Cir. 1978) (dismissing a complaint for damages when the extrajudicial claim sought only injunctive relief).

    The time-bar issue was raised by the Personal Capacity Defendants in their earlier motion to dismiss (No. 27) and considered by the Court in its Opinion and Order (No. 32). By way of background, Defendants argued that the three specific discriminatory events upon which Plaintiff bases his claim - (1) the hiring of a new employee to fulfill Plaintiff's duties, (2) the broadcast involving Defendant Manso's comments regarding the prior administration, and (3) the reduction of Plaintiff's salary - all occurred more than one year before Plaintiff filed the instant complaint. Defendants acknowledged that Plaintiff Rivera sent a letter complaining of discrimination to Defendants Manso and Marcano in August 2006.

CIVIL NO. 07-1935 (JP)          -9-

However, Defendants argue that Plaintiff Rivera failed to adequately describe this letter to the Court in his complaint in order for the Court to determine whether Plaintiff's complaint letter contained allegations identical to those set forth in the instant complaint. See Fernández, 681 F.2d at 49.

The Court agreed with Defendants that the information provided by Plaintiff Rivera in the complaint regarding his written complaint is sparse. Plaintiff Rivera alleges that "[i]n August 2006, Mr. Rivera notified Manso and Marcano, in writing, of his complaint of discrimination" (No. 1). However, construing the facts in the light most favorable to Plaintiff, the Court held that it could not dismiss Plaintiff's Section 1983 and Section 1981 claims at that stage of the litigation "unless more information regarding the deficiency of the written complaint comes into evidence" (No. 32).

In support of the instant motion for judgment on the pleadings, Defendants have brought to the Court's attention the letter at issue, dated August 14, 2006.[3] This letter was written by Plaintiff to Defendant Manso. It specifically addresses the hiring of Calderón on August 22, 2005, and the subsequent stripping of Plaintiff's responsibilities. Plaintiff states that Manso's actions are a sign of political discrimination and racial discrimination. Plaintiff goes on to state that the purpose of his letter is to "stop any

---

3.  This letter was referenced in the complaint, and therefore does not convert Defendants' motion to dismiss into a motion for summary judgment.

CIVIL NO. 07-1935 (JP)           -10-

limitations in taking future action before any court of justice." (No. 59, Ex. 2). Defendants argue that this letter does not toll the statute of limitations for Plaintiff's complaint because it was not addressed to all Defendants, does not encompass all of Plaintiff's claims listed in the complaint, and does not seek monetary damages.

The Court finds that Plaintiff's letter does not meet the requirements for equitable tolling of his complaint in this jurisdiction. First, although the letter is only written to Defendant Manso, the instant lawsuit was brought against the Municipality of Loiza, Manso, Marcano, and Lymari Escobar. Plaintiff's letter focuses on the hiring of Calderón and the stripping of Plaintiff's responsibilities, and in this context briefly mentions racial and political discrimination. In addition to the hiring of Calderón, the instant complaint also brings claims arising out of Plaintiff's reduction in salary and the discrimination that arose from his alleged appearance on a television program. Finally, Defendant does not request any specific remedy in his letter, although the logical remedy suggested by the letter is for Defendant Manso to return Plaintiff to his exclusive position with full responsibilities. Plaintiff does not mention monetary damages in the letter. However, in the complaint, Plaintiff seeks to recover $2,000,000.00 in damages, plus attorneys' fees and costs.

Plaintiff's attempt in his August 14, 2006 letter to toll any potential legal claim is unavailing. The purpose of equitable

CIVIL NO. 07-1935 (JP)          -11-

tolling is to enable a plaintiff to proceed against a defendant who was already put on notice about the potential claims against him. See Hernández-del Valle, 575 F.2d at 324 (finding that the plaintiff's letters did not give the defendant fair notice that he might be called upon to defend a damages suit, with different issues not applicable to a suit for injunctive relief).  The inclusion of a blanket statement regarding future limitations on court actions does not serve the purpose of informing a defendant about the specific claims proceeding against him.

In response, Plaintiff argues that the August 2005 hiring of Calderón does not mark the accrual of Plaintiff's claim.  Rather, Plaintiff asks the Court to consider the September 5, 2006 written response from Marcano to Plaintiff as the event that put Plaintiff on notice that he had been stripped of his work responsibilities, and therefore marks the accrual date of his claim.  Further, Plaintiff argues that the January 19, 2007 filing of his administrative complaint with the Equal Employment Opportunity Commission ("EEOC") tolls the statute of limitations.

In considering Plaintiff's opposition, the Court must determine when Plaintiff's Section 1983 claim accrued. As stated above, under Puerto Rico law, the statute of limitation begins to run when the injured party knew or should have known of the injury and of the likely identity of the responsible individual(s).  P.R. Laws Ann. tit. 31, §§ 5141, 5298(2).  The First Circuit has held that the rule

CIVIL NO. 07-1935 (JP)          -12-

in an employment discrimination case brought under Section 1983 is that "the limitations period begins to run when the plaintiff receives unambiguous and authoritative notice of the discriminatory act." Nieves-Vega v. Ortiz-Quiñones, 443 F.3d 134, 136 (1st Cir. 2006).

Here, the first act of discrimination alleged by Plaintiff is that another individual, namely Calderón, was hired to assume the bulk of Plaintiff's responsibilities. Plaintiff alleges that Calderón was hired on August 25, 2005, and thereafter Plaintiff was relegated to a lesser set a duties. Therefore, the Court finds that Plaintiff received unambiguous notice of Defendants' discrimination when he was effectively replaced by Calderón on August 25, 2005. Accordingly, the Court is not persuaded that Plaintiff's claim accrued on September 5, 2006, when he received a letter from Defendant Marcano stating that Plaintiff's internal complaint would not be further investigated.

Even if the Court had found that Plaintiff's claim accrued on September 5, 2006, the filing of an EEOC complaint on January 19, 2007, would not alter the Court's time-bar analysis. This Court has held that the filing of an administrative charge with the EEOC cannot serve as an extrajudicial claim for a cause of action under Section 1983 for an alleged violation of a plaintiff's constitutional rights because the EEOC does not have jurisdiction over such claims. León-Nogueras v. University of Puerto Rico, 964 F. Supp. 585, 589

CIVIL NO. 07-1935 (JP)            -13-

(D.P.R. 1997).  This Court has held that "the pendency of the administrative proceedings does not maintain the Section 1983 claim in a state of suspended animation."  Id. (citations omitted).

Having found that the letter written by Plaintiff on August 14, 2006, did not toll the statute of limitations for Plaintiff's Section 1983 and Section 1981 claims in this case, the Court will enter a separate judgment dismissing these claims accordingly.[4]

### B.   Title VII - Administrative Remedies

Defendants next argue that Plaintiff's Title VII claims must be dismissed because Plaintiff failed to timely exhaust his administrative remedies.  Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination.  See 42 U.S.C. § 2000e-5(f).  The charge "shall be filed" with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within 300 days if "the person aggrieved has initially instituted proceedings with [an authorized] State or local agency." 42 U.S.C. § 2000e-5(e); see Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999).  The First Circuit stated that "the baseline rule is that time limitations are important in discrimination cases, and that federal courts therefore should employ equitable tolling sparingly."  Id. (citing Rys v. United States

---

4.  The same analysis applies to Plaintiff's Section 1988 claims for attorneys' fees, which will also be dismissed accordingly.

CIVIL NO. 07-1935 (JP)            -14-

Postal Serv., 886 F.2d 443, 446 (1st Cir. 1989)). Equitable tolling is inappropriate unless a plaintiff misses a filing deadline because of circumstances effectively beyond his control (such as when the employer actively misleads the claimant, and he relies on that misconduct to his detriment). Id. (citations omitted).

It is undisputed that Plaintiff Rivera filed his claim with the EEOC on January 19, 2007. Defendants argue that the three discriminatory events alleged by Plaintiff in his complaint – the hiring of Calderón, the fall-out from the news broadcast, and the reduction in Plaintiff's salary – occurred outside the 300-day window during which Plaintiff could have filed his EEOC complaint. Therefore, Defendants argue that Plaintiff's Title VII claims are time-barred.

In response, Plaintiff claims that his complaint falls within the rubric of the continuing violation doctrine, which states that, "an employee [may] seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is 'some violation within the statute of limitations period that anchors the earlier claims.'" O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001) (quoting Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998)); see also, Davis v. Lucent Technologies, Inc., 251 F.3d 227 (1st Cir. 2001); Rodríguez v. Municipality of Barceloneta, 236 F. Supp. 2d 189 (D.P.R. 2002).

Continuing violations can be serial or systemic. Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405 (1st Cir. 2002). Serial

CIVIL NO. 07-1935 (JP)          -15-

violations refer to a number of discriminatory acts arising from the same discriminatory animus. Rivera-Rodríguez v. Frito Lay Snacks Caribbean, a Div. of Pepsico P.R., 265 F.3d 15, 21 (1st Cir. 2001). A claim alleging a serial violation is considered timely if one of the discriminatory acts occurred during the limitations period. Id. The anchor violation is only timely if it is part of and exposes a pattern of actionable discrimination. Id. Systemic violations refer to situations "where an employer maintains a discriminatory policy, responsible for multiple discriminatory acts that fall outside the limitations period." Crowley, 303 F.3d at 405. A claim alleging a systemic violation is timely filed if the alleged policy or practice continued into the limitations period. Rivera-Rodríguez, 265 F.3d at 21.

In the case at bar, Plaintiff has alleged a serial violation. The First Circuit has set forth three facts to consider in determining the sufficiency of a serial continuing violation claim: (1) whether the subject matter of the discriminatory acts is sufficiently similar to render the otherwise untimely acts substantially related to the timely acts; (2) whether the acts occur frequently, repetitively, or continuously or are isolated and discrete; and (3) whether the acts are sufficiently permanent to make the plaintiff aware of the need to assert his or her rights. O'Rourke, 235 F.3d at 731 (internal citations omitted).

The alleged anchoring violation is the February 13, 2006 reduction in Plaintiff's salary, which is the last dated allegation

CIVIL NO. 07-1935 (JP)          -16-

in Plaintiff's complaint.  Because the EEOC complaint was filed on January 19, 2007, there is no question that this violation falls outside of the 300-day period.  In his opposition brief, Plaintiff urges the Court to consider a September 5, 2006 letter from Defendants as an act of discrimination.  This letter is a response to Plaintiff's August 14, 2006 letter claiming discrimination.  However, Plaintiff did not reference this letter in his complaint.  He generally claims that Defendants "conducted no investigation or review of [Plaintiff's] complaint."  Compl. ¶ 29.

Plaintiff also mentions in his complaint that Defendants locked Rivera's briefcase and personal laptop computer in his office, to which Rivera did not have a key, in retaliation for Rivera's August 14, 2006 letter.  Although this event must necessarily have taken place after August 14, 2006, Plaintiff does not provide a date in his complaint.  However, even considering the facts in the light most favorable to Plaintiff, this claim does not meet the standard for an anchoring violation set forth by O'Rourke, *supra*, because it is not similar in subject matter to Plaintiff's other allegations.  Nor does Plaintiff's allegation that Defendants made racist comments about him suffice, because Plaintiff's letter to the EEOC demonstrates that the comments centered around the controversial television broadcast in October 2005.  The Court finds that the allegations made by Plaintiff are sparse and discrete, thereby defeating Plaintiff's continuing violation argument.  As such, Plaintiff has failed to prove that his EEOC complaint was timely

CIVIL NO. 07-1935 (JP)          -17-

filed.  Accordingly, Plaintiff's Title VII claims against the Municipality shall be dismissed with prejudice for Plaintiff's failure to timely exhaust administrative remedies.

Having dismissed all federal claims, the Court need not consider the Personal Capacity Defendants' qualified immunity argument.

### C. Puerto Rico Law Claims

Plaintiff has also brought claims under Puerto Rico law.  Having dismissed Plaintiffs' federal law claims, the Court declines to exercise jurisdiction over the remaining Puerto Rico law claims. See 28 U.S.C. § 1367(c)(3); Marrero-Gutiérrez v. Molina, 491 F.3d 1, 7-8 (1st Cir. 2007) (affirming district court's decision to decline jurisdiction over state law claims after dismissing federal claims). The Court therefore will enter judgment dismissing without prejudice Plaintiff's claims brought pursuant to Puerto Rico law.

## IV. CONCLUSION

In conclusion, the Court grants Defendants' motions for judgment on the pleadings.  The Court will enter a separate judgment dismissing Plaintiff's federal claims with prejudice, and his state law claims without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of April, 2009.

                                                  s/Jaime Pieras, Jr.
                                                         JAIME PIERAS, JR.
                                 U.S. SENIOR DISTRICT JUDGE